## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**ERIC S. MCFARLIN,**

      **Plaintiff,**

**v.**                                               **Case No: 5:13-cv-204-Oc-18PRL**

**COMMISSIONER OF SOCIAL
SECURITY**

      **Defendant.**

_____

## REPORT AND RECOMMENDATION[1]

      This case is before the Court on Plaintiff's appeal of an administrative decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). The Court has reviewed the record, the memoranda, and the applicable law. For the reasons set forth herein, the Commissioner's decision should be **AFFIRMED.**

### I.   Procedural History and Summary of the ALJ's Decision

      On February 3, 2010, Plaintiff filed an application for disability insurance benefits, alleging disability beginning October 13, 2008. (Tr. 141). The claim was denied initially, and upon reconsideration on June 17, 2010. At Plaintiff's request, a hearing was held on July 20, 2011. (Tr. 40). Both Plaintiff and an impartial vocational expert, Howard S. Feldman, testified at the hearing. (Tr. 40). On August 24, 2011, the Administrative Law Judge (ALJ) issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 21-39). Plaintiff's request for review

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

was denied by the Appeals Council (Tr. 1), and Plaintiff initiated this action on April 13, 2013. (Doc. 1).   Plaintiff has exhausted his administrative remedies, and the final decision of the Commissioner is ripe for review under 42 U.S.C. § 405(g).

At the time of the ALJ's decision, Plaintiff was forty-six (46) years old.   (Tr. 37, 43). Although Plaintiff stopped attending school in the eighth grade, he subsequently obtained his GED (General Equivalency Diploma), and took some college courses in construction from 2001-2007. (Tr. 43-44, 168).   Plaintiff trained and served as a volunteer firefighter from 1988-1993, and worked as a road construction inspector from 1993-2008.   (Tr. 45).   Plaintiff also has prior work experience as a framing carpenter.   (Tr. 56).

Based on a review of the record, the ALJ found that Plaintiff had the following severe impairments:   degenerative disc disease, bilateral shoulder pain, chronic fatigue, and an affective mood disorder.   (Tr. 26).   The ALJ found that the Plaintiff had the residual functional capacity to perform less than the full range of light work.   The ALJ found that Plaintiff can perform low stress, simple, and unskilled work with 1, 2, and 3 step instructions.   He can carry no more than 20 pounds, and can sit, stand, and walk 6 hours.   (Tr. 28).   The ALJ found Plaintiff should avoid frequent ascending and descending of stairs, and should avoid frequent overhead reaching.   He should avoid pushing and pulling motions with his lower extremities, and avoid hazards in the work place; and only occasionally stoop, balance, kneel, crouch or crawl, and cannot climb.   (Tr. 28).

Based upon his RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as bench assembler, electronics assembler, and ticket taker.   (Tr. 34).   The ALJ's finding includes his consideration of Plaintiff's limitations that erode the light unskilled occupational base, and the vocational expert's testimony regarding

what functions Plaintiff could perform in light of his limitations.   (Tr. 34).   Accordingly, the ALJ determined that Plaintiff is not disabled.

## II.  Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §404.1520.   The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

 The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g).   Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(per curiam)(internal citations omitted); see also *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356,

1358 (11th Cir. 1991)(per curiam).   "The district court must view the record as a whole, taking

into account evidence favorable as well as unfavorable to the decision."   *Foote,* 67 F.3d at 1560;

*see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)(stating that the court must

scrutinize the entire record to determine the reasonableness of the factual findings).

### III.  Arguments on Appeal

Plaintiff raises three arguments on appeal:   (1) that the ALJ did not apply the correct

legal standards requiring him to account for all of Plaintiff's limitations when determining his

RFC; (2) that the ALJ did not apply the correct legal standards when he failed to state what

weight he gave Dr. Ray's opinion supporting disability; and (3) that the ALJ erred by failing to

consider Plaintiff's medication side effects on his ability to work.

### a.  The ALJ's consideration of Plaintiff's limitations when determining Plaintiff's RFC.

Plaintiff first argues that the ALJ did not properly account for all of Plaintiff's limitations

when determining his RFC.   Namely, Plaintiff argues that the ALJ failed to properly account for

his chronic fatigue limitations and hand limitations.

### 1.  Chronic Fatigue

Plaintiff argues that the ALJ found that "chronic fatigue" was a severe impairment, and

that the ALJ "bound himself to include his finding of limitations in his findings at steps four and

five" of his analysis.   (Doc. 12, p. 10).   Plaintiff argues that the ALJ erred by failing to explain

how he accounted for "chronic fatigue" in the RFC, or the hypothetical question posed to the

vocational expert.   (Tr. 28, 66-67).   Plaintiff argues that the ALJ's finding that Plaintiff could

stand six hours and walk six hours every day does not account for his chronic fatigue.

In response, Defendant argues that the Commissioner identified only two instances in the

record where fatigue was mentioned by Plaintiff to a medical source.   First, records from

Clermont Medical Center on October 13, 2008 reflect that Plaintiff reported chest pain and pain in both shoulders, as well as feeling fatigue and weakness.   (Tr. 236).   Indeed, those records indicate that chest pain and concerns about having a heart attack were Plaintiff's chief complaint. (Tr. 236).   Plaintiff's report that he "feels fatigue and weakness," is only briefly noted, as secondary to his concerns about "chest pressure that is consistent and occasional sharp pains" (Tr. 236).   Fatigue or chronic fatigue is not listed on Plaintiff's "Problem List as of Encounter," in that record, although chest pain, shoulder pain, gastroesophageal reflux, weight loss, impaired fasting glucose, tobacco use, and abdominal pain are listed.   (Tr. 236).   Similarly, two days later, Plaintiff reported to Dr. Gunasekera that he had experienced "fatigue over the past 5 months."   (Tr. 213).   As before, Plaintiff's complaint of fatigue is secondary to his primary complaints of chest pressure.   (Tr. 213).   Plaintiff has not identified any, and the Court has not found any, additional noteworthy mentions of fatigue or chronic fatigue in the record.

Defendant correctly observes that subsequent treatment notes do not record complaints of fatigue by Plaintiff, nor has any doctor opined that Plaintiff was functionally limited by fatigue. Plaintiff's testimony indicates that pain, rather than fatigue, is what led to his inability to work. (Tr. 53).   Defendant therefore submits that, despite giving Plaintiff the benefit of a doubt and including chronic fatigue among his severe impairments, there was no basis for the ALJ to find that Plaintiff had any ongoing functional impairments as a result of fatigue.   See SSR 96-8p, 1996 WL 374184, *3 (S.S.A.) ("when there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity").

As Defendant points out, the record lacks any evidence of any ongoing functional

limitations that Plaintiff experiences as a result of fatigue.   Indeed, the record contains no

indication that Plaintiff complained of or sought treatment from a medical source for fatigue after

October 2008.   The Court agrees that the ALJ did not err by failing to explain how he accounted

for "chronic fatigue" in the RFC assessment or the hypothetical question.

## 2.  Hand Limitations

Plaintiff also argues that the ALJ erred in including no hand limitations in the RFC or

hypothetical question, despite evidence from multiple medical sources showing hand limitations.

Plaintiff contends that he met his burden of proving that he had limitations related to his hand

impairments, and that it was error for the ALJ to fail to account for those limitations in the RFC

and hypothetical question.

Plaintiff cites records of symptoms such as "hand numbness," (Tr. 282, 284, 285, 464),

hand pain (Tr. 266), pain "shooting down into his fingers (Tr. 405), and numbness at fingertips

(Tr. 546).   Plaintiff also testified that he has difficulty shaving and using a keyboard, and

sometimes needs help putting on a shirt and belt.   (Tr. 61, 63).   In light of this evidence,

Plaintiff contends it was error for the ALJ to conclude that Plaintiff could do light work,

including pushing and pulling arm controls, and using arms and hands to grasp, turn, and hold

objects.   Plaintiff contends the ALJ erred by failing to accept or reject hand limitations, and by

failing to include hand limitations in the hypothetical question.   (Doc. 12, p. 12).

As Defendant notes, however, the ALJ did acknowledge Plaintiff's allegations of

difficulty using his hands as well as reports of hand numbness to his doctors.   (Tr. 29-30).   The

ALJ noted that, in March 2010, Dr. Varma stated Plaintiff could use his hands for fine finger

movements continuously and for pushing/pulling occasionally.   (Tr. 31, 509).   State agency

physician Dr. Krishnamurthy found that Plaintiff had an unlimited ability to handle, finger and

feel with his hands (Tr. 552).   In December 2010, Dr. Varma opined that Plaintiff could only occasionally handle, finger, feel, or push/pull with either hand.   (Tr. 540).   The ALJ, however, gave Dr. Varma's opinion little weight because it was inconsistent with his own medical records and the other evidence of record.   *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.   *Crawford v. Commissioner of Social Security*, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.")   However, the ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.   *Edwards v. Sullivan*, 937 F.2d 580, 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).   Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir.1986).   The ALJ may discount the opinion of a physician, even a treating physician, when not supported by objective medical signs and diagnostic testing or inconsistent with the record.   *See* §§ 404.1527(c)(2), 416.927(c)(2).

The Court agrees that the ALJ did not err by giving Dr. Varma's opinion only little weight.   The ALJ observed that, beyond the check marks on Dr. Varma's form, his findings were not supported by any explanations, any objective clinical signs, diagnostic studies, or

laboratory findings.   (Tr. 32).   The ALJ also observed that Dr. Varma's opinion that Plaintiff could only sit, stand or walk for one hour in an eight hour day describes a nearly-bedridden individual, not someone like Plaintiff who maintains an active lifestyle.   (Tr. 32).

Notably, Dr. Varma's post-operative progress notes during the months following Plaintiff's surgery contain no mention of restrictions on fine finger movements or pushing or pulling.   (Tr. 297, 320, 326-27, 328-29).   Rather, Dr. Varma stated he had a "thorough discussion with patient" and that he encouraged physical therapy.   (Tr. 325).   The Court finds that the ALJ did not err by only giving Dr. Varma's opinion little weight in light Dr. Varma's other records and other substantial evidence of record, such as Plaintiff's own testimony regarding his active lifestyle and the opinion of Dr. Krishnamurthy.   The Court also notes the ALJ's observation that Dr. Varma's opinion was not supported by range of motion testing, or a comprehensive musculoskeletal exam.   Therefore, the Court finds that that the ALJ's findings regarding Plaintiff's RFC were supported by substantial evidence.

### b.  The ALJ's Consideration of Dr. Ray's Disability Opinion

Plaintiff argues that the ALJ did not apply the correct legal standards when he completely failed to mention the disability opinion of Dr. Ray.   Plaintiff argues that the ALJ erred by failing to state with particularity the weight given to Dr. Ray's opinion, which supports a disabling level of functioning.   (Doc. 12, p. 14).   On August 3, 2009, Dr. Ray completed a questionnaire regarding long term disability benefits for Plaintiff, and opined that Plaintiff was capable of "no work at this time," and stated Plaintiff was being seen weekly.   (Tr. 334-35).

The record indicates that Dr. Ray saw Plaintiff on only two occasions in March 2009, prior to Plaintiff's bilateral shoulder arthroscopy.   (Tr. 447-453).   The medical records reveal that Dr. Ray was a colleague of Dr. Varma (Tr. 296), and that Plaintiff was seen almost

exclusively by Dr. Varma before and after his surgery.   (Tr. 290-344).   Defendant, therefore, argues that Dr. Ray's August 21, 2009 opinion that Plaintiff had problems with range of motion and strength and was unable to work (Tr. 334-335) does not constitute an opinion from a "treating source," and that it need not be given particular consideration.

The regulations define a "treating source" as a physician who has provided medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the [claimant]."   20 C.F.R. § 404.1502; see also *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that opinion of psychologist who examined claimant only once was not entitled to great weight).   "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."   20 C.F.R. § 404.1527(d)(2).   The regulations require that "good reasons" be specified only for the weight given by a treating source's opinion.   See 20 C.F.R. § 404.1527(d)(2).

The Court agrees with Defendant's contention that the ALJ did not err when failing to discuss the opinion of Dr. Ray.   The record confirms that Dr. Ray did not have an ongoing treatment relationship with Plaintiff.   Dr. Ray examined Plaintiff initially on March 17, 2009 for bilateral shoulder symptoms (Doc. 452) and on March 24, 2009 for shoulder pain (Doc. 447) during pre-operative consultations.   Following those visits, however, the records indicate that Dr. Varma, rather than Dr. Ray, treated Plaintiff on a weekly basis.   (Tr. 290-344).   Notably, Dr. Varma's opinion of March 15, 2010, which was expressly considered by the ALJ, superseded Dr. Ray's opinion.   (Tr. 509-10).   This may be the most likely reason for the ALJ's failure to expressly discuss Dr. Ray's opinion.   In light of the limited relationship between Plaintiff and Dr. Ray, and Dr. Varma's subsequent 2010 opinion, the ALJ understandably found Dr. Ray's

succinct and unsupported prior opinion to be of little or no significance.

The Court also observes that Dr. Ray's opinion of August 21, 2009 is conclusory, unsupported by testing, and not supported by adequate explanations or laboratory findings.   Dr. Ray was not in a position to provide the "detailed, longitudinal, picture" anticipated by the regulations as being provided by a treating source.   See 20 C.F.R. § 404.1527(d)(2).   Moreover, Dr. Ray's brief, conclusory opinion is inconsistent with the medical evidence as a whole, including Dr. Varma's records, Dr. Krishnamurthy's opinion, and Plaintiff's own testimony.   As such, the ALJ did not err even if he should have considered Dr. Ray to be a treating physician, because there were numerous good reasons for giving the opinion little or no weight.   See 20 C.F.R. § 4041527(d)(2).

Accordingly, the Court finds that the ALJ did not err when failing to credit the opinion of Dr. Ray.

### c.   The ALJ's Consideration of Plaintiff's Medication Side Effects

Finally, Plaintiff argues that the ALJ erred by failing to properly consider that Plaintiff experiences side effects from medication.   Plaintiff argues that treatment records note that his medication could cause side effects including headaches (Tr. 233), dizziness, drowsiness, and sleepiness (Tr. 59), and that he has experienced constipation (Tr. 177), weight gain (Tr. 191) and headaches.   (Tr. 203).   Plaintiff argues that these symptoms could affect his ability to work, and that the ALJ erred by failing to include the side effects in the RFC assessment or hypothetical question.

The record, however, reveals that the ALJ did consider Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms, and concluded that his symptoms as a whole were not credible to the extent alleged.   (Tr. 32-33).   Consequently, the ALJ did not

err by failing to include his alleged medication side effects in the RFC finding and hypothetical question.   *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004) (ALJ not required to include findings in the hypothetical that he properly rejected as unsupported).

For example, Plaintiff testified at the hearing that medications cause him to be dizzy and drowsy (Tr. 59), but he did not attribute any specific functional limitations to these symptoms. A treatment note from October 28, 2008 indicates that Plaintiff was prescribed Isosorbide Mononitrate for chest pain and that it caused severe headaches.   (Tr. 233).   It appears, however, that Plaintiff did not continue to take this medication, as it is not listed among his medications during subsequent visits in November and December 2008.   (Tr. 215, 224, 227, 230).   In June 2010, Dr. Rosenthal, a neurologist, opined that Plaintiff's headaches were caused by possible analgesic overuse, and prescribed Gabapentin for pain control, recommending Plaintiff wean off Percocet.   (Tr. 547).   Plaintiff reported to Dr. Rosenthal in May 2011 that his pain had decreased while on Cymbalta (Tr. 544).   At the hearing, Plaintiff testified the medications and exercise helped his pain.   (Tr. 58-59).

Based upon the record, the Court finds that the ALJ did not err by concluding Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms as a whole (including medication side effects) were not credible to the extent alleged.   *Lapuyade v. Astrue*, No. 8:06-cv-2642-T-26TGW, 2007 WL 4461189, *6 (M.D.Fla. Dec. 14, 2007) (ALJ did not err by failing to discuss each piece of evidence, such as general allegations about medication side effects that were not particularized in terms of functional limitations).   There is no requirement that the ALJ specifically refer to every piece of evidence in his decision.   *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.2005); *Lipscomb v. Commissioner of Social Security*, 2006 WL

2952736 at *2 (11th Cir.2006) (applying the principle that there is no requirement that the ALJ specifically refer to every piece of evidence to the issue of medication side effects).

### IV. RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ'S decision should be Affirmed.

**DONE AND ENTERED** in Ocala, Florida, on June 5, 2104.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies to:

District Judge

All Counsel